UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STACY D.,

            Plaintiff,

     v.                                        **DECISION AND ORDER**
                                                  19-CV-228S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

        1.        Plaintiff Stacy D.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff filed her application for benefits under Titles II and XVI of the Act on July 5, 2015. (R.[2] at 59.) Plaintiff alleged disability beginning on July 1, 2014, due to a panic disorder and agoraphobia. (Id.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Paul Greenberg held a hearing on November 16, 2017, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 26-58.) Vocational Expert Bernard Preston also appeared and testified by telephone. At the time of the hearing, Plaintiff was 36 years old, with

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

twelfth grade education but no diploma and work experience as a cashier, cook and receptionist. (R. at 185.)

3.      The ALJ considered the case de novo and, on May 2, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 11-20.) On December 28, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on February 22, 2019, challenging the Commissioner's final decision.[3]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 16, 17.)  Plaintiff filed a response on February 24, 2020 (Docket No. 18), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the

---

[3] The ALJ's May 2, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

> mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of July 1, 2014. (R. at 13.) At step two, the ALJ found that Plaintiff has the medically determinable impairments of anxiety disorder (alternatively

diagnosed as PTSD), depression, and spinal dysfunction. (R. at 14.) The ALJ then found that Plaintiff does not have an impairment or combination of impairments that has significantly limited or is expected to significantly limit her ability to perform basic work-related activities for 12 consecutive months, and that Plaintiff therefore does not have a severe impairment or combination of impairments. (Id.) The ALJ concluded that Plaintiff was not disabled from July 1, 2014 through the date of the decision. (R. at 20.)

11. Plaintiff argues that the ALJ erred in finding her spinal disorder and her anxiety and depression as nonsevere at step two.

12. "Notwithstanding the typical meaning of the word 'severe,' the second step's evidentiary requirement is *de minimis*, and is intended only to screen out the truly weakest of cases." Robert M. v. Saul, No. 19-CV-0435L, 2021 WL 780259, at *2 (W.D.N.Y. Mar. 1, 2021) (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)). A step two finding of "not severe" is only appropriate where "the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect'" on an individual's ability to perform basic work activities. Id. (quoting Rosario v. Apfel, 1999 U.S. Dist. LEXIS 5621 at *14, 1999 WL 294727 (E.D.N.Y. 1999)). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," and they include physical, postural and sensory functions, as well as mental functions like understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

13. In determining whether a mental health impairment is severe, an ALJ must apply a "special technique" as specified in the regulations. 20 C.F.R. § 1520a. Pursuant

to the special technique, the ALJ will consider four broad functional areas in which it rates the degree of the claimant's functional limitation: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. See 12.00E, Listing of Impairments, 20 C.F.R. § 404, Subpart P, Appendix 1.

       14.     After rating the degree of functional limitation resulting from a claimant's impairment(s), an ALJ must assess the severity of a claimant's mental limitations on a five-point scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 1520a. For a medically determinable impairment to be "severe," a claimant's limitation must be greater than mild in one of these areas. 20 C.F.R. § 1520a(d)(1). If it is greater than mild, the ALJ then assesses whether it has lasted the requisite 12 months. If it has, the ALJ proceeds to step three of the analysis, determining whether the impairment meets or is equivalent in severity to a listed mental disorder.  20 C.F.R. § 404.1520a(d)(2).

       15.     Here, Plaintiff was diagnosed with depression and anxiety and underwent mental health treatment for these issues. She treated with counselors at Lifetime Health Medical Group, Spectrum Human Services, and Lake Shore Behavioral Health and was prescribed Xanax for her anxiety. (See, e.g., R. at 237-40, 777, 1074.) In addition to attending counseling appointments, Plaintiff frequently presented at the Emergency Room for treatment of her panic attacks. (See, e.g., R. at 564, 9/1/14; R. at 568, 10/2/14; R. at 576-80, 12/4/14; R; R. at 628, 2/12/15, R. at 631, 2/28/15, R. at 412, 5/24/15, R. at 451, 6/19/15; R. at 458, 6/23/15; R. at 524, 6/29/15; R. at 374, 7/7/15; R. at 427, 7/22/15; R. at 1092, 7/24/15; R. at 486, 8/7/15; R. at 336, 8/10/15; R. at 1684, 12/9/15; R. at 1748, 1/18/16; R. at 1761, 2/2/16.) Plaintiff told a mental health care provider at Lakeshore

Services that visiting the ER was the only way she felt she could get relief from her symptoms. (R. at 237).

    16.    The ALJ applied the special technique for Plaintiff's anxiety. Based upon treatment notes, along with two consultative examinations, and Plaintiff's activities of daily living, the ALJ found that Plaintiff demonstrated no limitation in the areas of understanding, remembering or applying information, and concentrating, persisting, or maintaining pace. (R. at 19.) The ALJ found that Plaintiff had a mild limitation in interacting with others and in adapting or managing herself. (Id.)  In support of his finding that Plaintiff had only a mild limitation in managing herself, the ALJ noted that Plaintiff appeared well-groomed, prepared easy meals, and performed some chores. Regarding Plaintiff's frequent ER visits, the ALJ cited Plaintiff's ability to summon a taxicab to get herself to the hospital as evidence of her ability to manage herself, but he did not address the frequency of Plaintiff's ER visits.

    17.    The regulations define the "ability to manage oneself" as follows:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R., Part 404, Subpart P, Appendix 1, 12.00 (E)(4).

18.     Although the parties do not address the issue,[4] this Court *sua sponte* finds that the ALJ's assessment that Plaintiff was mildly limited in managing herself is not supported by substantial evidence. The ALJ did not specifically address Plaintiff's frequent—and possibly medically unnecessary—visits to the ER when he assessed her ability to manage her symptoms and deal with change. The ability to take a cab to the ER does not mean that the decision to visit the ER up to 2 times a week for perceived anxiety symptoms is an appropriate way to manage psychologically-based symptoms. Plaintiff's reaction to her symptoms regularly caused her to take what might be characterized as inappropriate steps, and this fact warranted the ALJ's consideration. It is for the ALJ to determine to what extent this pattern affected Plaintiff's ability to manage herself, but he must explain his reasoning based on this important part of the record. Because the ALJ did not address this recurring pattern in Plaintiff's medical history, this Court cannot determine whether his analysis was proper.

19.     A failure to identify a severe impairment at step two can be harmless error if the ALJ proceeds with the subsequent steps and specifically considers both severe and nonsevere impairments when formulating a claimant's RFC.  Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (citing Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir.2010)

---

[4] Edward H. v. Comm'r of Soc. Sec., No. 2:19-CV-00180-CR, 2021 WL 1207454, at *10, n. 2, (D. Vt. Mar. 31, 2021) (citing Womack v. Astrue, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008) ("This [c]ourt generally decides appeals under the Social Security Act by considering the issues raised and argued in a plaintiff's brief. Courts are not required to guess as to grounds for an appeal, nor are they obliged to scour an evidentiary record for every conceivable error. But a reviewing court may not, on the other hand, 'abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence.' ") (citation omitted) (quoting Bridges v. Gardner, 368 F.2d 86, 90 (5th Cir.1966)); Mangan v. Colvin, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014) ("Even if the government had not raised it, a reviewing court may *sua sponte* address issues in social security cases."); Pastrana v. Chater, 917 F. Supp. 103, 107 n.2 (D.P.R. 1996) ("The importance of assuring the fair administration of the social security system is a sufficiently important concern to justify the Court's *sua sponte* consideration of the ALJ's bias.").

(finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination)). But here, the ALJ stopped his consideration after finding Plaintiff's anxiety and depression to be nonsevere. Because the ALJ did not remedy his error at step two by considering Plaintiff's anxiety in formulating a RFC, the error is not harmless, and remand is warranted.

20. Plaintiff also argues that the ALJ improperly failed to find that her spinal disorder was a severe impairment. Because remand is warranted on other grounds, this Court will not address this argument here. On remand, the ALJ shall consider all the medical evidence according to the regulatory factors.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 16) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     May 18, 2021
           Buffalo, New York

                                             s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                          United States District Judge